## THE ROYAL ARROW.

(District Court, N. D. California, First Division. February 23, 1918.)

No. 16320.

SEAMEN ⊜⟶12—CONTRACTS—CONSTRUCTION.

Where the shipping articles did not define the duties of a mess boy, and he was hired through a union, whose rules prescribed the hours as from 6 a. m. to 7 p. m., the master, in the absence of proof of any clear custom to the contrary, may not discharge the mess boy because he declined to serve coffee to the men at an earlier hour.

In admiralty. Libel by H. W. Peterson against the American steamship Royal Arrow. Decree for libelant.

F. R. Wall, of San Francisco, Cal., for libelant.
Pillsbury, Madison & Sutro, of San Francisco, Cal., for respondent.

DOOLING, District Judge. Libelant shipped on board the Royal Arrow as 'mess boy for a voyage from San Francisco to Taku Bar, China, and return. He was discharged by the master before the United States consul at Cebu, Philippine Islands, and brings this action for expense of his maintenance and transportation to Manila, whence he was sent home on a government transport, and for his wages up to the date of his arrival in San Francisco, because, as claimed by him, he was wrongfully discharged.

The reason for his discharge was his refusal to serve coffee to the men at 5:30 a. m. He had served the men at this hour on the voyage between San Francisco and Shanghai, in the expectation that he would, as was the custom, be paid by the men for such service. The men failing to pay him, he declined to render further service to them before 6 a. m. The master ordered him to do so on three several days, and, upon his refusal, fined him four days' wages, or $6, for each refusal. At Cebu he discharged him and left him without means, except the sum of $18.40. The consul upheld the fine of $6 and the discharge.

The master claims that the men were becoming troublesome and mutinous, because of their failure to receive coffee at 5:30 a. m., and that libelant's discharge was necessary for the welfare of the ship.

The shipping articles do not define the duties of a mess boy, but it

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is in evidence that their hours of service are, by the rules of their union, from 6 a. m. to 7 p. m. In the absence of any specific contract, as libelant was employed through his union, it must be taken that, when respondent went to the union for a mess boy, it was a part of the contract of employment that he should, except always in cases of emergency, work regularly at the union hours. If, with some understanding with the men, he worked longer hours, to be paid by them for the overtime, he could not ordinarily be compelled by the master to perform this extra work.

It is not permissible for the master to dissolve the contract with the seaman and discharge him for trivial reasons. The master has the power of fining for disobedience, and he exercised that power; whether rightly or not need not be determined. But in view of the implied contract as to hours arising out of the employment of libelant through his union, and the silence of the shipping articles on the subject, and the absence of proof of any clear custom to the contrary, the court must find that the regular working hours of libelant were from 6 a. m. to 7 p. m., and that the master was not authorized to discharge the libelant for failure, in the absence of any emergency, to go to work earlier.

A decree will be entered for the libelant for the sum of $123.50, the amount claimed, and for costs.